DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the State of Ohio, has appealed the decision of the Summit County Court of Common Pleas granting co-Defendant, Roy West's motion to dismiss and co-Defendant, Lance Mathis' motion to suppress.
 I {¶ 2} On January 9, 2004, Officer Hamidi of the Akron Police Department responded to a domestic dispute on Staeger Street in Akron, Ohio. The alleged suspect had fled the scene, after allegedly making a verbal threat to the victim. Officers Keenan and Herstich, from the Akron Police Department also responded as backup to the domestic dispute call, but arrived after the alleged suspect had fled.
 {¶ 3} Believing the suspect to be in the immediate area, Officer Hamidi described to responding Officers Herstich and Keenan the suspect's clothing and that such suspect threatened to kill his girlfriend; Officer Hamidi did not mention that the suspect was Caucasian. While patrolling the area, Officers Herstich and Keenan noticed an African-American man, Roy West ("West"), wearing clothes that matched the description given by Officer Hamidi. When Officer Herstich asked West to talk with them, he took flight, ignoring the Officers' requests to stop.
 {¶ 4} Lance Mathis ("Mathis") had been sitting on the front porch of his house, not far from where the officers had initially tried to stop West. He got up and was walking into his house when West came up and followed Mathis into his residence and closed the door behind them. Officer Herstich, who had been following West, kicked open the front door to Mathis' house and entered the residence. Officer Keenan testified that while Officer Hertich was at the front door, he had gone to the back of the house to guard the back door.
 {¶ 5} After Officer Herstich had entered Mathis' house, he allegedly got into an altercation with West. Officer Herstich testified that West hit him in the neck. Officer Herstich took West outside and tried to handcuff him.
 {¶ 6} While Officer Herstich wrestled to restrain West on Mathis' front yard, Officer Hamidi arrived on the scene. Both officers testified to smelling strong odors of marijuana while on Mathis' front yard. Unaware of exactly what was happening at Mathis' house, Officer Hamidi presumed there was a burglary in progress, due in part to the ajar door which Officer Herstich had kicked open. Officer Hamidi entered Mathis' house to assure that there were no other perpetrators at the scene. Officer Hamidi smelled and observed "golf ball sized" clumps of marijuana throughout the home. Following this trail of marijuana, Officer Hamidi, now accompanied by Officer Keenan, found and arrested Mathis who was hiding in the basement surrounded by several bags of marijuana. Based on this evidence, the Officers obtained a search warrant for Mathis' house.
 {¶ 7} West was indicted under R.C. 2903.13 for Assaulting a Police Officer, and R.C. 2921.31(A) for Obstructing Official Business. Both charges were dismissed following Defendant West's motion to dismiss on the grounds that the allegations of assault and obstruction of justice were the result of an unlawful entry and arrest.
 {¶ 8} Mathis was indicted under R.C. 2925.03(A)(2) for Trafficking in Marijuana and R.C. 2925.11(A) for Possession of Marijuana. He pled not guilty. Mathis filed a motion to suppress the evidence seized by the police, alleging that the police illegally entered his house. The trial court held an evidentiary hearing and on March 30, 2004, the trial court granted Mathis' motion to suppress evidence, and dismissed the indictment against West. The State has appealed, raising one assignment of error as to each defendant.
 II Assignment of Error Number One
"The trial court committed error when dismissing the indictment [against west] in this case"
 {¶ 9} In its assignment of error pertaining to West, the State has alleged that the trial court erred in suppressing evidence regarding the assault charge and in dismissing the indictment against West. We agree.
 {¶ 10} The trial court suppressed evidence and dismissed the charges against West, finding that they were the result of an unlawful entry and arrest. The State argues that the Officers had reasonable suspicion to stop and question West since he fit the description of the suspect they had been searching for. Further, the State maintains that West had no expectation of privacy and no standing to raise a Fourth Amendment claim regarding the search of Mathis' house. Finally, the State claims that the Officers' entry into Mathis' house was proper, falling under the hot pursuit exception to the warrant requirement. Based on the above, the State concludes that the trial court erred in granting West's motion dismiss.
 {¶ 11} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. An appellate court is to accept the trial court's findings of fact that are supported by credible evidence, as the trial court is in the best position to evaluate questions of fact, credibility, and weight of the evidence. State v. Miller (May 23, 2001), 9th Dist. No. 20227, at 5. However, an appellate court reviews de novo the question of whether an officer had reasonable suspicion to make an investigatory stop, which is the first issue to be decided in this case. Jones at ¶ 9, citing Ornelas v. United States
(1996), 517 U.S. 690, 699, 116 S. Ct. 1637, 134 L.Ed.2d 911.
 {¶ 12} "A law enforcement officer must have a reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping [him.]"State v. VanScoder (1994), 92 Ohio App.3d 853, 855, citingTerry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S. Ct. 1868,20 L.Ed.2d 889. After identifying the facts known to the police officer at the time of the stop, an appellate court must decide whether, under a standard of objective reasonableness, those facts would give rise to reasonable suspicion justifying a stop.Ornelas, 517 U.S. at 696-697. "No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted."State v. Carlson (1995), 102 Ohio App.3d 585, 593.
 {¶ 13} In determining whether a stop was objectively reasonable, the court must consider the totality of the circumstances. State v. Anderson (1995), 100 Ohio App.3d 688,692. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" State v.Bobo (1988), 37 Ohio St.3d 177, 179, certiorari denied (1988),488 U.S. 910, 109 S. Ct. 264, 102 L.Ed.2d 252, quoting UnitedStates v. Hall (C.A.D.C. 1976), 525 F.2d. 857, 859.
 {¶ 14} If evidence is obtained pursuant to an unlawful stop of an individual such evidence may be excluded. However, in this case, we find that the initial attempt to stop West was proper. Officer Herstich stopped West due to his belief that West was involved in a domestic dispute. Consistent with the description given to Officer Herstich, West was wearing a red shirt, blue jeans, and a dark coat. The Officers spotted West in the area surrounding the residence in which the alleged domestic dispute took place. Officer Hertich was told that the suspect had threatened to kill his girlfriend and her new boyfriend.
 {¶ 15} The fact that West is African American and the actual domestic dispute suspect was Caucasian does not affect the validity of the stop. Officer Herstich was unaware of the suspect's race because of a problem with his computer. "[A] police officer's mistake of fact will not lead to the suppression of evidence where the mistake was `understandable' and a reasonable response to the situation facing the police officer.State v. Fain (Jan. 21, 1998), 9th Dist. No. 18306, at 4, citing Hill v. California (1971), 401 U.S. 797, 804,91 S. Ct. 1106, 28 L.Ed.2d 484. The Officers were searching for a man in the general area surrounding the victim's residence who had, from what they had been told, threatened to kill the victim. At the time of the stop, the Officers knew only that West met the description they had been given of the suspect. Their mistake as to his race did not affect the validity of the stop, since they were unaware of race at the time. See State v. Kaszas (Sept. 20, 1995), 9th Dist. No. 2413-M, at 9.
 {¶ 16} Believing West to be the domestic dispute suspect they had been searching for, the Officers stopped the police cruiser. Officer Herstich got out of the car and identified himself to West as an Akron Police Officer. Officer Herstich testified that as soon as he told West that they needed to talk to him, West took off on foot. Officer Herstich then began to follow West, who entered Mathis' house and shut the door. Officer Herstich, still pursuing West, kicked down Mathis' door and entered his house, whereupon West allegedly hit Officer Herstich. West argues that Officer Herstich's entry into Mathis' house was a violation of his Fourth Amendment rights and therefore, evidence gained against him while the Officer was inside Mathis' house should be excluded. We disagree.
 {¶ 17} The Fourth Amendment confers the right to refuse consent to entry of a defendant's residence. State v. Robinson
(1995) 103 Ohio App.3d 490. To further the Fourth Amendment's guarantee against unreasonable searches and seizures, evidence obtained by an unlawful entry into one's home may be excluded from trial. Mapp v. Ohio (1961), 367 U.S. 643, 81 S. Ct. 1684,6 L.Ed.2d 1081. Generally, however, guests do not have standing to raise Fourth Amendment issues for invasions of third party homes because they lack the requisite expectation of privacy.State v. Burton (May 25, 1988), 9th Dist. No. 13408, at ¶ 3.
 {¶ 18} Here West was not the owner of the home in which he was found. Thus, his expectations of privacy were not violated by the entry of Officer Herstich into Mathis' home.
 {¶ 19} Even if West had standing and Officer Herstich's search was illegal, the assault on Officer Herstich was still sufficiently distinguishable from Officer Herstich's entrance into Defendant Mathis' home so as to purge itself from the taint of the search. Under the "fruits of a poisonous tree" doctrine, only evidence that was obtained through the exploitation of the search is capable of exclusion. State v. Stringfield (Sept. 4, 1991), 9th Dist. No. 1991, at 2-3, citing Wong Sun v. UnitedStates, (1963), 371 U.S. 471, 487, 83 S. Ct. 407, 9 L.Ed.2d 441.
 {¶ 20} West's assault on Officer Herstich was created by West's own misconduct and not an exploitation of the search by Officer Herstich. Therefore, such evidence does not fall under the exclusionary rule as it is separate and distinct from Officer Herstich's initial entry into Mathis' home. See State v. Kelly
(Sept. 24, 1993), 2nd Dist No. 3007, 1993 Ohio App. LEXIS 4680 at *11. "[A]n observation of a fresh crime committed during or after the arrest is not to be suppressed even if the arrest is unlawful." (Emphasis omitted.) Akron v. Holmes, 9th Dist. No. 21590, 2004-Ohio-832, at ¶ 13, appeal denied (2004),102 Ohio St.3d 1532, quoting State v. Ali, 154 Ohio App.3d 493,2003-Ohio-5150 at ¶ 13.
"This court has also held that where a person who is being arrested commits a new crime during or after the arrest, the conduct witnessed which constitutes that new crime need not be suppressed merely because the initial arrest, which may be the motive for the new crime, turns out to be unlawful. * * * It is clear that further criminal acts, such as obstructing official business and resisting arrest, are not legitimatized by Fourth Amendment transgressions." (Internal citations omitted.) Holmes
at ¶ 14.
Such a ruling is in line with policy discouraging assaults on police officers. The evidence pertaining to the assault on Officer Herstich should not have been excluded. Even if the initial entry into Mathis' residence was unlawful, evidence of West's assault on the officer is admissible.
 {¶ 21} Having found that the trial court erred in suppressing the evidence pertaining to West's alleged assault on Officer Herstich, we turn to the second part of the State's assignment of error: whether it was appropriate for the trial court to dismiss the charges against West.
 {¶ 22} When considering a motion to dismiss charges, the trial court may only review the indictment to determine whether it is valid on its face. If the indictment is valid, the trial court may not dismiss it.
"This Court has previously held that, in considering whether to dismiss an indictment, a trial court should only look at the face of the indictment: [I]n reviewing the propriety of a criminal indictment issued under Ohio law, a court may determine only whether the indictment is valid on its face: The Ohio Rules of Criminal Procedure * * * do not allow for `summary judgment' on an indictment prior to trial. * * * A motion to dismiss an indictment tests the sufficiency of the indictment, `without regard to the quantity or quality of evidence that may be produced by either the state or the defendant.'" (Citations omitted.)
State v. Barsic (May 10, 1995), 9th Dist. No. 94CA005883, at 3-4. {¶ 23} We find that it was improper for the trial court to dismiss the charges against West. The trial court's consideration of West's motion to dismiss should have been limited to a review of the face of the indictment. West does not allege that the indictment was invalid. Whether West is guilty of the offenses is not before us. The only issue before this court now is whether it was proper for the trial court to dismiss the indictment, and we have found that it was not.
 {¶ 24} The State's assignment of error is well taken. The trial court erred in granting West's motion to dismiss. The evidence of West's alleged assault of Officer Herstich should not have been suppressed, and the charges against West should not have been dismissed.
 II Assignment of Error Number Two
"The trial court committed error when suppressing the evidence in [the] case [against mathis]."
 {¶ 25} In its assignment of error pertaining to Mathis, the State has contended that the trial court erred in suppressing the evidence against Mathis in this case. We agree.
 {¶ 26} Mathis has contended that the evidence against him was properly suppressed because the police entered his home illegally. There were two separate warrantless entries into Mathis' house. The first entry was when Officer Herstich had been pursuing West and followed him to the door of Mathis' house and then proceeded to kick down the door to arrest West. The second entry occurred a few minutes later. Officer Herstich was outside of the Mathis house arresting West. Officer Hamidi then appeared on the scene. Officer Hamidi asked Officer Herstich where Officer Keenan was. Officer Herstich replied that he did not know. Officer Herstich was engaged in trying to arrest West, and before he could explain to Officer Hamidi what was going on, Officer Hamidi had left.
 {¶ 27} Seeing the front door of the Mathis house kicked in, Officer Hamidi testified that he thought that there was a burglary in process. Before Officer Hamidi entered the house, he testified that he had seen large portions of marijuana on the floor and had smelled it coming out of the house. Officer Hamidi then drew his weapon and started searching the house for burglars. Officer Keenan also entered the house with his weapon drawn and followed Officer Hamidi. They found Mathis in the basement. Mathis was handcuffed and taken outside. The Officers then obtained a search warrant to search for the drugs based upon the marijuana they had observed.
 {¶ 28} The propriety of the trial court's decision to exclude the evidence as it relates to the charges against Mathis depends on whether one or both of the entries into his home were permissible. If the entry into Mathis' residence were legal, then the marijuana that was seen in plain view is properly admissible. "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v. Waddy (1992),63 Ohio St.3d 424,442, certiorari denied (1992),506 U.S. 921, 113 S. Ct. 338,121 L.Ed2d 255, quoting Coolidge v. New Hampshire (1971),403 U.S. 443, 466,91 S. Ct. 2022, 29 L.Ed.2d 564.
 {¶ 29} The police may lawfully enter a private residence without a warrant if the entry was made upon exigent circumstances. State v. Applegate (1994), 68 Ohio St.3d 348,349. A common breed of exigent circumstances is when an officer is in hot pursuit of a suspect. United States v. Radka (1990),904 F.2d 357, 361. When evaluating the exigencies of entering a home a totality of circumstances approach is taken. Id.
 {¶ 30} The initial entry into Defendant Mathis' home occurred as Officer Herstich pursued Defendant West. This initial entry is justifiable under the "hot pursuit" exception to the warrant requirement. At the time Officer Herstich entered the Defendant's house he was pursuing, whom he reasonably thought, was a man involved in a domestic dispute who had threatened to kill his girlfriend and had just fled from the police.
 {¶ 31} The Officers were justified in chasing West into Mathis' house without a warrant. A suspect may not avoid arrest simply by outrunning the police and entering a residence. UnitedState v. Santana (1976), 427 U.S. 38, 42-43, 96 S. Ct. 2406,49 L.Ed.2d 300. "[A] suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place." Id at 43.
"[W]hen officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor." Middletown v. Flinchum (2002), 95 Ohio St. 3d 43,45.
 {¶ 32} We find that since Officer Herstich was in hot pursuit of West when he entered Mathis' home, the entry was legal and not a violation of Mathis' Fourth Amendment rights. Therefore, the evidence gathered through Officer Herstach's entry and while on Mathis' front yard should not be excluded as it was in plain view after he legally entered Mathis' house.
 {¶ 33} The second entry presents different circumstances. Officer Hamidi's entry and the evidence garnered from his search is distinct from the evidence obtained from Officer Herstich's entry as the exigencies related to Officer Herstich's search had passed by the time Officer Hamidi arrived on the scene.
 {¶ 34} To determine the validity of Officer Hamidi's search we must consider the basis for Officer Hamidi's search while recognizing that the law affords police officers room for reasonable mistakes. Gerstein v. Pugh (1975), 420 U.S. 103,111-112, 95 S. Ct. 854, 43 L.Ed.2d 54. Further, evidence should not be suppressed when the police reasonably respond to situations to which they are confronted. Hill v. California
(1971), 401 U.S. 797, 804, 91 S. Ct. 1106, 28 L.Ed.2d 484.
 {¶ 35} Officer Hamidi conducted his search under the mistaken belief that a burglary was in progress at Mathis' residence. The State contends that Officer Hamidi reasonably believed this because 1) he had received an emergency call from Officer Herstich, 2) Officer Herstich was arresting Defendant West on the front lawn, 3) the front door at Mathis' house was kicked in, 4) Officer Hamidi did not know where Officer Keenan was, 5) Officer Hamidi knew the procedure for responding to a burglary, and 6) Officer Hamidi had already gone inside before Officer Herstich could finish informing him of the situation. While not all of these factors could reasonably have led Officer Hamidi to believe a burglary was in progress, we find that the combination of the factors present could reasonably lead a trained officer to Officer Hamidi's conclusion.
 {¶ 36} Since Officer Hamidi reasonably believed a burglary was in progress, exigent circumstances existed to justify his entry and a protective sweep of Mathis' home. A protective sweep, which is limited to areas where an individual may be hiding, is appropriate when officers have a reasonable belief based on articulable facts that the area searched harbors an individual posing a threat to the Officers or others. Maryland v. Buie
(1990), 494 U.S. 325, 327-328, 110 S. Ct. 1093, 108 L.Ed.2d 276, certiorari denied (1991), 498 U.S. 1106, 111 S. Ct. 1011,112 L.Ed.2d 1094.
 {¶ 37} In this case, Officer Hamidi was looking for a burglar, potential victims, accomplices, and Officer Keenan. While executing this protective sweep, Officer Hamidi saw and smelled marijuana in plain view. When an Officer is properly on the premises, evidence found in plain view is not subject to the exclusionary rule. State v. Fry (Aug. 28, 1991), 9th Dist No. 14996, at 4. Based on the foregoing, we find that the State's assignment of error concerning Mathis is well taken.
 {¶ 38} The State's assignments or error are sustained. The judgment of the Summit County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Boyle, J., concurs.
Carr, P.J., concurs in judgment only.