DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Daniel F. Hellriegel, appeals from the judgment of the Summit County Court of Common Pleas that denied his motion to suppress. We affirm.
 I. {¶ 2} On April 13, 2005, Appellant was indicted on one count of operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19, a fourth-degree felony; one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(A), a first-degree misdemeanor; one count of resisting arrest, in violation of R.C. 2921.33(A), a second-degree misdemeanor; one count of obstructing official business, in violation of R.C. 2921.31(A), a second-degree misdemeanor; one count of driving under suspension, in violation of R.C. 4510.11, a first-degree misdemeanor; and one count of speeding, in violation of R.C. 4511.21, a minor misdemeanor. Appellant pled not guilty to the charges.
 {¶ 3} On May 17, 2005, Appellant, through counsel, filed a motion to suppress any evidence taken from Appellant as a result of the arrest, arguing that police were not justified in entering his home without a warrant. Appellant also moved the court to dismiss the charges.
 {¶ 4} A hearing was held on the motion to suppress. In an order dated June 6, 2005, the court denied the motion to suppress and motion to dismiss. The court made the following findings of fact:
"[O]n February 26, 2005 Defendant Hellriegel was clocked by Officer Steve Heim, driving in Stow, Ohio, at a rate of 51 miles per hour in a 35 mile per hour zone. Officer Heim gave chase to the speeding car, activated his overhead lights and siren and pursued the car for more than 30 seconds onto Stow Road. The driver of the car failed to comply with the signals to stop, and continued driving, eventually turning into a driveway at a house on Stow Road. The driver of the car jogged toward the front door, failed to comply with the officer's command to stop and entered the house.
"Through a license plate check, the officer had learned that the car at issue bore the license plate registered to a Delaware, Ohio, business. The officer found the front door to be locked, but the back door unlocked. The officer waited for backup, and then entered the home and found Defendant in bed under the covers. Wet footprints marked a path from the door to the bed. The officer assisted the Defendant from the bed and observed a strong odor of alcohol, red, glassy eyes and slurred speech." The court concluded that the officers' entry into the home without a warrant was justified under the hot pursuit exigent circumstance exception to the search warrant requirement.
 {¶ 5} The matter proceeded to trial. Upon the recommendation of the prosecutor, the court ordered the charge of driving under suspension dismissed, and amended the operating under the influence charge to a first-degree misdemeanor. A jury found Appellant guilty of operating under the influence, as amended, failure to comply, resisting arrest, and obstructing official business. The court found Appellant guilty of the speeding violation. The trial court sentenced Appellant accordingly.
 {¶ 6} Appellant timely appealed, asserting one assignment of error for review.
 II. Assignment of Error
"THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE WARRANTLESS SEARCH OF APPELLANT'S RESIDENCE, BECAUSE NO EXIGENT CIRCUMSTANCES EXISTED."
 {¶ 7} In his sole assignment of error, Appellant contends that the trial court erred in not suppressing evidence obtained during a warrantless search of his home. We disagree.
 {¶ 8} A motion to suppress under the Fourth Amendment to the United States Constitution involves a mixed question of law and fact; as such, this Court defers to the trial court's findings of fact but conducts a de novo review of the trial court's application of the appropriate legal standard to those facts.Ornelas v. United States (1996), 517 U.S. 690, 696-97,134 L.Ed.2d 911; State v. Booth, 151 Ohio App.3d 365,2003-Ohio-829, at ¶ 12. We review "findings of historical fact only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at *1, quoting Ornelas, 517 U.S. at 699.
 {¶ 9} In its response brief, the State notes that the court's ruling on the motion to suppress does not have any bearing on the speeding violation and the offense of failure to comply because these offenses were already completed and observed before the police entered what was later determined to be Appellant's home. At this point, the police officers had the requisite probable cause and would have been justified in stopping and arresting Appellant. See State v. Franchi, 9th Dist. No. 22474,2005-Ohio-5105, at ¶ 10, citing United States v. Watson (1976),423 U.S. 411, 417, 46 L.Ed.2d 598.
 {¶ 10} The State also points out that the charges and convictions for resisting arrest and obstructing official business would not be affected by the motion to suppress ruling, because these were new crimes observed and committed during or after the pending arrest, and the legality or the illegality of the arrest was immaterial. Indeed, this Court has recognized this fact, stating:
"The Fourth Amendment's exclusionary rule, which [the defendant] seeks to invoke, does not sanction violence as an acceptable response to improper police conduct. The exclusionary rule only pertains to evidence obtained as a result of an unlawful search and seizure. Further criminal acts-includingassault and resisting arrest — are not legitimatized byFourth Amendment transgressions." (Emphasis in original; internal citations omitted.) Akron v. Recklaw (Jan. 30, 1991), 9th Dist. No. 14671, at *1. See, also, State v. Mathis, 9th Dist. Nos. 22039 22040, 2004-Ohio-6749, at ¶ 20.
Thus, we are left to determine the propriety of the suppression with respect to the charge of operating a vehicle under the influence of alcohol.
 {¶ 11} Appellant argues, "Except for speeding, appellant was operating his vehicle in a completely legal manner." Appellant further maintains, that, up to the point that the officers entered the home, Appellant had only engaged in activity constituting a misdemeanor offense, and that a misdemeanor offense is not grave enough to justify the application of the hot pursuit exception.
 {¶ 12} The police lawfully enter a private residence without a warrant if exigent circumstances exist, such as when the police are in hot pursuit of a suspect. Mathis at ¶ 28. Hot pursuit is to be determined from the totality of the circumstances in the case. Id. In Middletown v. Flinchum, 95 Ohio St.3d 43,2002-Ohio-1625, the Ohio Supreme Court held, "When officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor." Id. at paragraph one of the syllabus. This Court has also recognized that "[a] suspect may not avoid arrest simply by outrunning the police and entering a residence." Mathis at ¶ 31, citing United State v.Santana (1976), 427 U.S. 38, 42-43, 49 L.Ed.2d 300. "`[A] suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place.'" (Edits in original.) Mathis at ¶ 31, quotingSantana, 427 U.S. at 43.
 {¶ 13} Appellant argues that the facts and circumstances surrounding the incident do not justify the application of the hot pursuit exception to excuse the police from the warrant requirement. In this case, the court concluded:
"[T]he officers were in hot pursuit of a suspect who hurried into a house, disregarding commands of police to stop. The police could not be sure the residence was the home of the driver because the car was not registered to an owner with a matching address. Thus, risk of potential danger was elevated and the officer was reasonable in waiting for backup to proceed."
 {¶ 14} Officer Stephen Heim from the Stow Police Department testified at the hearing. Officer Heim relayed that at approximately 2:30 a.m. on February 26, 2005, he observed a 1990 silver Oldsmobile minivan traveling northbound on Darrow Road at a high rate of speed. Officer Heim clocked the vehicle at 51 mph in a 35 mph zone. Officer Heim attempted to catch up with the vehicle; however, the vehicle appeared to accelerate. The vehicle then made a right-hand turn onto Stow Road. Officer Heim activated his overhead lights and attempted a traffic stop; he also turned on his siren several times. However, the vehicle proceeded northbound on Stow Road, eventually slowed and turned into a residential driveway. Officer Heim transmitted a message regarding the traffic stop over his radio. Officer Heim testified that at this point, he was ready to arrest Appellant for failure to comply. At this time, the operator of the vehicle exited the vehicle and started to jog towards the front door of the house. Officer Heim exited his patrol car and yelled for the individual to stop and return to his vehicle. However, the individual failed to stop and instead jogged into the house and locked the door.
 {¶ 15} Officer Heim then tried the door to the house but noticed it was locked. He informed dispatch of the events that had ensued, and checked the registration of the Oldsmobile. Dispatch connected the license plate to a business in Delaware, Ohio. Officer Heim explained, "We had no connection to the house to the vehicle so we had no idea why the person ran into the house." Officer Heim then checked the back of the house to see if the individual may have run out the back door; he discovered that the back door was unlocked. Within approximately one and one-half minutes of Officer Heim's dispatch about the traffic stop, reserve units (non-commissioned civilians) arrived at the scene. Then, Officer Brian Snavely arrived and took position at the front door of the house. Within four minutes of the stop, another officer, Mike Barker, arrived at the scene. Officers Heim and Barker then entered the house. They found Appellant, whom they identified as the operator of the vehicle, lying in bed with the covers pulled up to his neck and his hands under the sheets. The officers ordered Appellant several times to show his hands. Appellant refused. The officers pulled the blankets down, and "it was easily obvious that he was the driver." The officers also saw a set of wet footprints leading to the bedroom from the front door. Appellant refused to get out of bed when ordered, so the officers physically removed Appellant and placed him in handcuffs. The officers observed a strong odor of alcoholic beverage on Appellant's person, slurred and mumbling speech, a "thick tongue," and red, glassy eyes. Officer Heim testified that Appellant was uncooperative at this time.
 {¶ 16} Upon review, we do not find error in the trial court's factual findings. We also conclude that the trial court did not err in finding that officer Heim was in hot pursuit of Appellant and that he was legally justified in entering the home to arrest Appellant. Furthermore, any observations the officers made during the execution of the lawful arrest were not protected by theFourth Amendment exclusionary rule. See Recklaw, at *1 ("The exclusionary rule only pertains to evidence obtained as a result of an unlawful search and seizure."), citing Mapp v. Ohio
(1961), 367 U.S. 643, 6 L.Ed.2d 1081.
 {¶ 17} Therefore, we conclude that the trial court did not err in denying Appellant's motion to suppress. Appellant's assignment of error is overruled.
 III. {¶ 18} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. concurs.