DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Tony Walters, appeals from his convictions and sentence in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.
 {¶ 2} On March 23, 2005, Akron officers received a call from Walter Lehman. In that call, Lehman reported that he believed that his girlfriend, Lori Dillon, was being held against her will by Defendant. Police responded to Defendant's home and spoke with a young woman in front of the home. The young woman, A.M., identified herself as Defendant's daughter. Officers questioned A.M. regarding whether Dillon and Defendant were in the home. A.M. *Page 2 
indicated that both were present and entered the home to bring Dillon outside. Dillon came out of the home a short time later with A.M. At that time, Dillon informed officers that she was not being held against her will and had not been assaulted that day.
 {¶ 3} While questioning Dillon, officers noted that her face was bruised and that she appeared nervous. Consequently, officers ran a check to determine whether a protective order was in place that prohibited Defendant from contacting Dillon. After contacting dispatch and the Akron Clerk of Courts, officers were informed that a protective order was in place.[1] At that time, officers decided to arrest Defendant. Rather than cooperate, Defendant began playing the guitar in his home in a loud manner. Officers, therefore, attempted to force entry into the home. After officers twice kicked the door, Defendant opened it. Officers at the door indicated that Defendant took a "fighting stance" and then ran back into the home toward the kitchen. Defendant was then subdued by the officers with the use of a taser.
 {¶ 4} Following Defendant's arrest, officers performed a protective sweep of the home. Upon descending the basement stairs, officers came to a padlocked door. They retrieved the key from Dillon, opened the basement door, and *Page 3 
immediately recognized the odor and equipment indicative of a methamphetamine lab. Based on the officers' discovery, Defendant was indicted on the following charges: one count of illegal manufacture of drugs in violation of R.C. 2925.04; one count of illegal possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041; one count of violating a protection order in violation of R.C. 2919.27; one count of aggravated possession of drugs in violation of R.C.2925.11; one count of possession of marijuana in violation of R.C.2925.11; one count of child endangering in violation of R.C. 2919.22; and one count of illegal possession of drug paraphernalia in violation of R.C. 2925.14.
 {¶ 5} Prior to trial, Defendant moved to suppress the evidence against him. Following a hearing, the trial court denied Defendant's motion and the matter proceeded to a jury trial. At the onset of the trial, the State dismissed the charge of violating a protective order. Thereafter, Defendant was found guilty of the remaining counts in the indictment and sentenced accordingly. This appeal followed.
 ASSIGNMENT OF ERROR I
"The trial court erred by denying [Defendant's] motion to suppress."
 {¶ 6} In his first assignment of error, Defendant argues that the trial court erred in denying his motion to suppress. This Court agrees.
 {¶ 7} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. *Page 4 
20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
 {¶ 8} In his brief, Defendant challenges numerous aspects of the actions taken by the officers effectuating his arrest. Defendant challenges the duration of the officers' initial investigation, their subsequent entry into his home, and the search of his home. We first address the search of the home as it is dispositive of Defendant's first assignment of error.
 {¶ 9} Assuming arguendo that officers properly investigated the complaint involving Dillon and properly arrested Defendant in his home without a warrant, their subsequent search was unreasonable. In support of the search, the State has argued that the officers conducted a legally permissible protective sweep of the premises following Defendant's arrest. We cannot agree.
 {¶ 10} "A `protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie (1990), 494 U.S. 325, 327. The Fourth Amendment permits an officer to perform a protective sweep
 "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational *Page 5 
inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." (Internal quotations, alterations, and citations omitted.) Id.
 {¶ 11} We find fault with the State's argument on two bases. First, protective sweeps are not warranted for every in-home arrest. Id. at 334, fn. 2. Rather, "reasonable, individualized suspicion" is required before a protective sweep may be performed. Id. Second, the protective sweep is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." Id. at 335.
 {¶ 12} Initially, we find it unlikely that officers were permitted to engage in any protective sweep under the facts presented. Officers received a call from Lehman indicating that a woman, Dillon, was being held against her will by Defendant. Lehman also informed officers that Defendant had previously assaulted Dillon and was known to carry a gun. Upon arriving at Defendant's home, officers encountered his fourteen-year old daughter, A.M. Officers questioned A.M. about Dillon's presence in the home. A.M. indicated that Dillon was indeed inside the home. Thereafter, A.M. entered the home and returned a short time later with Dillon. After exiting the home, Dillon informed officers that she was not being held against her will. In addition, Dillon told officers that the bruise on her face was from an assault that had occurred several days earlier. Finally, both A.M. and Dillon informed officers that Defendant was the only *Page 6 
individual remaining in the home and neither was aware of any weapon in the house.
 {¶ 13} During their discussion with Dillon, officers were mistakenly informed that a protective order was in place that prohibited Defendant from contacting Dillon. Based on that information, officers proceeded to enter Defendant's home and effectuate an arrest. At the time Defendant was arrested, officers had no reason to believe that any other individual was in the home. Two other occupants of the home informed officers that Defendant was the only person remaining in the home. Moreover, no officer testified that anything observed in the home suggested that another person was in the home. Instead, officers testified that it was standard procedure to perform a protective sweep after every in-home arrest. As noted above, however, this position was squarely rejected in Buie. Buie, 494 U.S. at 334, fn. 2 (rejecting the government's argument that in-home arrests are so inherently dangerous that protective sweeps should be justified without any further evidence of a need to search). The premise that a standard police procedure could justify the protective sweep has also been rejected:
 "Four officers testified that it is their department's policy to conduct a sweep of a house during every home arrest as a matter of course. While we recognize the reality that these particular officers are often executing drug-related warrants, which frequently involve a threat to officer safety and thereby justify protective sweeps, Buie clearly instructs that protective sweeps must be justified on an individualized basis. (Emphasis sic.) Buie does not allow for a sweep in all cases." U.S. v. Davis (C.A.8 2006), 471 F.3d 938, 946, fn. 5. *Page 7 
 {¶ 14} Furthermore, even if this Court were to assume that a limited protective sweep was justified, officers exceeded the permissible scope of such a search. When officers approached the basement door of the home, officers noted that it was padlocked from the outside. Officers then retrieved a key to the basement from Dillon, the woman who was allegedly confined in the basement. Officers explained that they needed to the search the basement because other victims could be located inside. Officers, however, had no information to support that belief. Their initial information, that Dillon was being held against her will, had been refuted by Dillon herself. Moreover, no officer testified that additional information of any kind led to his belief that the basement contained other victims. Consequently, officers did not have specific and articulable facts to support a belief that the basement harbored an individual. Buie, 494 U.S. at 327.
 {¶ 15} With respect to the locked basement, we find Davis to be instructive.
 "The District Court concluded that breaking into the locked closet exceeded the scope of a lawful protective sweep, and we agree. The officer who broke the lock acknowledged that nothing he observed indicated that anyone was hiding in the closet and that if someone were actually hiding inside, the individual would have been locked in the closet." Davis, 471 F.3d at 945.
Like the officer in Davis, the officers here had no information to support a conclusion that the basement harbored any individual. Moreover, as the basement was padlocked from the outside, officers could not have reasonably believed that anyone in the basement posed a danger to them. Consequently, the search of the basement exceeded the permissible limits of a protective sweep. *Page 8 
 {¶ 16} Finally, we find R.C. 2933.33 to be inapplicable. R.C. 2933.33
permits officers to search a home without a warrant if they have probable cause to believe that a methamphetamine lab is present. In the instant matter, the record contains one reference to a methamphetamine lab. Officer Gupta testified that the notes on the terminal in his cruiser indicated "that there might have been a meth lab within the house where Mrs. Dillon was being held." Neither Officer Gupta nor any other witness identifies the source of this information. Moreover, the remainder of the record is devoid of any evidence to corroborate such information. Consequently, officers had no reason to believe that a methamphetamine lab was present on the property. Cf State v. White, 9th Dist. No. 23522, 2008-Ohio-657 (permitting a warrantless search when officers had a belief approaching probable cause that a methamphetamine lab was present). In addition, during his testimony, Officer Gupta conceded that upon arriving at the home that he "had no reason to search the house. We were essentially going in to arrest Mr. Walters." The officers, therefore, had no basis for searching the home without a warrant.
 {¶ 17} Defendant's first assignment of error has merit.
 ASSIGNMENT OF ERROR II "The trial court erred in failing to dismiss the charges against [Defendant] on the basis that his right to a speedy trial was violated." *Page 9 
 {¶ 18} In his second assignment of error, Defendant asserts that his speedy trial rights were violated. We disagree.[2]
 {¶ 19} "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, at paragraph one of the syllabus. Following his arraignment, Defendant was appointed counsel. After his motion to suppress was denied, Defendant sought and received new counsel. Despite being represented by counsel for the duration of the trial court proceedings, Defendant continued to file pro se motions. Consequently, Defendant's motion was not properly before the trial court. SeeState v. Brown, 9th Dist. No. 23759, 2007-Ohio-7028, at ¶ 4, fn. 1 (disregarding a pro se motion filed when the defendant was represented by counsel).
 {¶ 20} In addition, with respect to the issue of a speedy trial violation, Defendant's motion reads as follows:
 "The defendant is aware that the law states the `Time' or, Right to a Speedy trial issue must be argued on the first day of trial how ever; Council is advising the defendant this is not so." (Sic.)
Defendant raised no legal argument in support of a speedy trial violation and did not request that the charges be dismissed on that basis. This Court, therefore, *Page 10 
finds that Defendant did not raise the issue of a speedy trial violation in the trial court. A defendant may not raise for the first time the issue of the denial of a speedy trial in an appellate court. State v.Baldauf (1990), 67 Ohio App.3d 190, 197. Thus, Defendant waived his speedy trial argument and his second assignment of error lacks merit.
 {¶ 21} Defendant's first assignment of error is sustained and his second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 11 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
CARR, P. J., MOORE, J. CONCUR
[1] This information was later determined to be incorrect.
[2] As this violation would bar retrial, we address Defendant's second assignment of error despite sustaining his first assignment of error. *Page 1