[Cite as *State v. Martin*, 2011-Ohio-2379.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DONALD MAURICE MARTIN

    Appellant

C.A. No.    25452

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 08 10 3210(A)

DECISION AND JOURNAL ENTRY

Dated: May 18, 2011

DICKINSON, Judge

## INTRODUCTION

{¶1} Donald Martin grew marijuana in his basement. Police discovered the marijuana while they were performing a protective sweep in response to a reported burglary in process. They approached Mr. Martin and asked permission to search his house, which he granted. They discovered, in addition to the marijuana, cocaine and firearms. The trial court denied Mr. Martin's motion to suppress, and he pleaded no contest to trafficking in cocaine and having weapons under disability. The trial court sentenced him to four years imprisonment. We affirm the trial court's judgment because the search of Mr. Martin's home was not unconstitutional and the trial court did not err by denying his motion to suppress.

## BACKGROUND

{¶2} Tavio Kelker, Mr. Martin's teenage stepson, was running late for school when he heard a man trying to get in the backdoor. Because he was home alone, he called his mother to

ask her to call Mr. Martin and the police. He testified that the burglar seemed to give up and leave, so he went upstairs to get ready for school.

{¶3} Mr. Kelker then heard someone "breaking out the window." He ran to investigate and saw a man at the broken window. He called his mother again, set the house alarm, and grabbed a bat. When the man started to come through the window, he smashed the bat against the pane, scaring the burglar off.

{¶4} Mr. Kelker testified that he then purposefully set off the alarm and waited for the police to come. When the police arrived, they called out, asking if anyone was in the house. Mr. Kelker responded by identifying himself and saying that he lived there. He came outside holding the baseball bat and the phone. The officers patted him down, handcuffed him, and put him in the squad car. They asked him if anyone else was in the house. He told them that he was the only one home and that the man who had attempted to break in had fled.

{¶5} Sergeant Matthew Sunkin testified that he responded to a call of a burglary in progress with a shot fired, which he interpreted as "a botched home invasion." He also received a report of a man fleeing the scene. As he approached the house, he observed a broken window. He testified that the damage appeared to have been caused by a bullet fired from inside the house as there was glass outside and the screen had been damaged.

{¶6} Sergeant Sunkin went around to the front of the house and saw the officers speaking to Mr. Kelker. Without talking to them, he went in the house with Officer Jackson to conduct a protective sweep. They cleared the downstairs, the upstairs, and proceeded to the basement. Sergeant Sunkin testified that, as he went down the stairs, he noticed a bright light coming from an enclosure in front of him that was large enough for multiple people to be inside. He and Officer Jackson cleared the rest of the basement before returning to the enclosure.

Sergeant Sunkin testified that he noticed that there was a padlock on a door of the enclosure and an exhaust fan. He also smelled marijuana. Sergeant Sunkin testified that, based on his experience, "[i]t was pretty obvious . . . that it was a marijuana cultivation operation."

{¶7} Sergeant Sunkin had Officer Jackson look inside the enclosure through a gap in the door to make sure no one was there. Officer Jackson only saw plants, so he and Sergeant Sunkin left the basement, having secured the house. Sergeant Sunkin relayed to Detective Matthew Hudak what he had seen.

{¶8} Mr. Martin testified that, when he arrived at his house, Detective Hudak approached him and asked for consent to search the house. He testified that Detective Hudak threatened to get a warrant and charge his fiancée with whatever the police found if he would not consent to a search. Detective Hudak denied he had threatened Mr. Martin. Detective Hudak testified that he read the written consent form to Mr. Martin, told him that his consent could be withdrawn at any time, that he could accompany the officers as they searched the house, and that a police dog would participate in the search. Mr. Martin signed the consent form and gave the police the combination for the padlock on the enclosure in the basement. The police removed the plants from the enclosure. A search of the rest of the house and Mr. Martin's vehicle revealed cocaine and firearms.

## MOTION TO SUPPRESS

{¶9} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* But see *State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the

conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶8.

{¶10} The trial court found that the police responded to a burglary in progress with shots fired. It determined that, upon arriving at the scene, Sergeant Sunkin observed a broken window and believed that the shot had come from inside the house. Sergeant Sunkin did not hear Mr. Kelker say that there was no one else in the house and proceeded to conduct a "protective sweep." When he entered the basement, Sergeant Sunkin saw a padlocked enclosure with an exhaust fan and noticed a bright light and the smell of marijuana coming from it. The trial court further found that Officer Jackson saw marijuana plants growing inside the enclosure. It also found that Mr. Martin's testimony that threats were made against him was not credible. As the trial court based its findings on the testimony of Sergeant Sunkin, Detective Hudak, and Mr. Kelker, we accept the trial court's findings.

## PROTECTIVE SWEEP

{¶11} Mr. Martin's first assignment of error is that the trial court erred by denying his motion to suppress because the protective sweep of his home was unconstitutional. Warrantless searches of a home are presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Id*. "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id*. (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)). "The need to protect or preserve

life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Id.* (quoting *Mincey*, 437 U.S. at 392).

{¶12} This Court has previously recognized that an officer's reasonable belief that a burglary is in progress constitutes exigent circumstances that justify warrantless entry into a home. *State v. Mathis*, 9th Dist. No. 22039, 22040, 2004-Ohio-6749, at ¶36. In *Mathis*, an officer pursued a domestic violence suspect into a home, kicking in the door in the process. *Id.* at ¶4. A second officer arrived on the scene and proceeded to make a protective sweep of the house because he believed there was a burglary in progress. *Id.* at ¶6. This Court concluded that the officer's belief that a burglary was in progress was reasonable given that he had received an emergency call from an officer, an officer was arresting a suspect on the front lawn, the door of the house was broken in, another officer was unaccounted for, and he entered the home before the other officer explained the situation to him. *Id.* at ¶35.

{¶13} Sergeant Sunkin was specifically responding to a burglary with shots fired call. When he arrived at the house, he saw a window that appeared to have a bullet hole in it. Going around to the front, he saw officers arresting a teenager. He did not speak with the officers or the teen and proceeded inside with Officer Jackson to perform the sweep. Based on the facts known to Sergeant Sunkin, it was objectively reasonable for him to believe that there could be someone inside the house.

{¶14} Even if Sergeant Sunkin had heard the stepson say that he lived there and was alone, he had reason to search the house. The United States Supreme Court has held that a protective sweep is permissible if the officer "'possess[es] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ ]" the officer in believing,' that the area swept harbored an individual posing

a danger to the officer or others." *State v. Buie*, 494 U.S. 325, 327 (1990) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968))). We cannot say that officers must cease investigating a reported burglary with shots fired merely because an individual, especially one meeting the officers with a weapon, claims to be a resident of the house and that there is no one else inside. The sweep performed by Sergeant Sunkin and Officer Jackson did not exceed the scope of a permissible sweep under *State v. Buie*, 494 U.S. 325 (1990). Sergeant Sunkin testified that the enclosure was large enough to hold multiple people. He had Officer Jackson look through a gap in the door to check for people. When Officer Jackson only observed plants, they left the basement.

{¶15} Mr. Martin has argued that his case is similar to *State v. Walters*, 9th Dist. No. 23795, 2008-Ohio-1466. His situation, however, is different from the facts in *Walters*. In *Walters*, the Akron police received a report that a woman was being held against her will by the defendant. *Id.* at ¶2. Two officers investigating the report went to the defendant's home and asked his daughter if they could speak to the alleged victim. *Id.* When the alleged victim came outside, she denied being assaulted or held against her will. *Id.* The officers noticed that she appeared nervous and had bruises on her face. *Id.* at ¶3. They contacted dispatch and were told that the alleged victim had a protective order against the defendant. *Id.* They decided to arrest the defendant and entered the home when he refused to come outside. *Id.* After arresting the defendant, the officers performed a protective sweep. *Id.* at ¶4. When they came upon a padlocked door, they retrieved the key from the alleged victim, opened it, and discovered a methamphetamine lab in the basement. *Id.*

{¶16} This Court concluded that the officers had exceeded the scope of a permissible protective sweep. *State v. Walters*, 9th Dist. No. 23795, 2008-Ohio-1466, at ¶9. The Court

noted that the alleged victim and the defendant's daughter both told the officers that the defendant was the only person inside the house. *Id*. at ¶12. Further, neither officer saw any indication that another person was in the house or that another victim could be in the basement. *Id*. at ¶13-14. Even the initial reason for the investigation, that a woman was being held against her will, was refuted by the alleged victim. *Id*. at ¶14. Additionally, this Court concluded that "as the basement was padlocked from the outside, officers could not have reasonably believed that anyone in the basement posed a danger to them." *Id*. at ¶15. Because the officers did not have a reasonable suspicion that someone in the basement posed a danger to them or that there was a victim in the basement, opening the padlocked enclosure exceeded the permissible scope of a protective sweep.

{¶17} Sergeant Sunkin performed the protective sweep in response to a burglary in progress with shots fired, which he interpreted as a "botched home invasion." He had observed evidence that led him to believe a shot had come from inside the house. There were particular, articulable facts giving rise to a reasonable suspicion that someone was inside the house that could pose a danger to the officers or who could need assistance.

{¶18} Further, Sergeant Sunkin never heard Mr. Kelker say he lived at the house, that he was alone, and that the burglar had fled. Even if he had, Mr. Kelker was a teenager who was at the house during school-hours and who greeted the police holding a weapon. Unlike in *State v. Walters*, 9th Dist. No. 23795, 2008-Ohio-1466, the police did not know Mr. Kelker's relationship to the crime being investigated, and they did not need to believe the uncorroborated statement of an unknown individual that no one remained in the house. In *Walters*, two people at the scene, one of whom the police knew was the alleged victim, stated that no one else was in the house. Their statements removed any reasonable suspicion the police had that victims could be

in the basement, whereas nothing terminated Sergeant Sunkin's reasonable suspicion about possible victims or suspects inside the house.

{¶19} Mr. Martin has argued that, even if the protective sweep was permissible, Officer Jackson looking into the padlocked enclosure exceeded the scope of the sweep because any person that was inside the enclosure would have been locked inside and unable to harm the officers. He has pointed to the testimony of Detective Hudak that the enclosure only had one door, which was padlocked, and has argued that the situation is analogous to *State v. Walters*, 9th Dist. No. 23795, 2008-Ohio-1466, and *United States v. Davis*, 471 F. 3d 938 (8th Cir. 2006).

{¶20} This Court, in deciding *State v. Walters*, 9th Dist. No. 23795, 2008-Ohio-1466, did look to *United States v. Davis*, 471 F. 3d 938 (8th Cir. 2006). *Walters*, 2008-Ohio-1466, at ¶15. The Court in *Davis* concluded that an officer exceeded the permissible scope of a protective sweep by breaking the lock off a closet door as "nothing he observed indicated that anyone was hiding in the closet and that if someone were actually hiding inside, the individual would have been locked in the closet." *Id*. at 945. The situations in *Walters* and *Davis*, however, are not analogous to the sweep performed in Mr. Martin's house. In both cases Mr. Martin has cited, the protective sweep was performed incident to an arrest. In *Davis*, no argument was made that the officers were looking for victims, and, in *Walters*, this Court concluded the officers did not have a reasonable suspicion that other people were in the house. *Walters*, 2008-Ohio-1466, at ¶15. Further, in both instances, the officers unlocked, or broke the lock off, the only door to the enclosure or closet before they searched inside.

{¶21} Mr. Martin's marijuana enclosure is a custom-made addition to his house. There was no reason for the officers to presume there was only one way in or out of the enclosure. Though it turned out that there was only one door, Sergeant Sunkin testified that, due to the

clutter in the basement, he could not be sure of that at the time officer Jackson looked in it. In fact, he testified that the padlocked doorway was obscured by a big-screen television and that it took a few moments to locate it. The officers were also responding to a burglary in progress call, not effectuating an arrest, meaning that their sweep of the house included looking for victims, not just burglars. Accordingly, the mere fact that someone inside the enclosure would be locked in and pose no threat to the officers did not defeat the officer's interest in checking the enclosure for victims.

{¶22} Given the totality of the circumstances, the protective sweep was reasonable for the officers to perform. It was limited to places a person could be; the officers did not open the kitchen cabinets for example. Once they were "reasonably sure" no one was in the house, they terminated the sweep. Accordingly, the trial court did not err by denying Mr. Martin's motion to suppress as the protective sweep did not constitute an unconstitutional search. His first assignment of error is overruled.

## CONSENT

{¶23} Mr. Martin's second assignment of error is that the search of his house was unconstitutional because his consent was not voluntary. He has argued that his case is analogous to *State v. Wildman*, 6th Dist. No. WD-08-061, 2009-Ohio-6986. In *Wildman*, the Court concluded that the defendants' consent to the search was not voluntary because it followed too closely after an illegal search. *Id*. at ¶22. As discussed above, however, the protective sweep was not illegal. Accordingly, Mr. Martin's consent was not tainted by a previous illegal search. His second assignment of error is overruled.

CONCLUSION

**{¶24}** The protective sweep was a legal search of the house to ensure the safety of the officers and to check for burglars or potential victims, and Mr. Martin voluntarily consented to the subsequent search of his house. Accordingly, the search was not unconstitutional, and the trial court did not err by denying his motion to suppress. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, J.
CONCURS

BELFANCE, P. J.
<u>CONCURS IN JUDGMENT ONLY, SAYING:</u>

{¶25}  I concur in the judgment only because I do not join in the dicta contained in the main opinion.

<u>APPEARANCES:</u>

DONALD MAURICE MARTIN, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.