DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant James W. Fry has moved this Court to reconsider its decision, which was journalized on June 6, 2007. SeeState v. Fry, 9th Dist. No. 23211, 2007-Ohio-2734. In that decision, this Court affirmed the judgment of the Summit County Common Pleas Court. Specifically, this Court held that because the resolution of Appellant's second assignment of error required review of certain exhibits not made a part of the record, this Court had no choice but to presume regularity of the proceedings below and affirm. Id. at ¶ 32.
 I *Page 2 {¶ 2} In determining whether to grant a motion for reconsideration, a court of appeals must review the motion to see if it calls to the attention of the court an obvious error in its decision or if it raises an issue that was either not considered at all or was not fully considered by the Court when it should have been. Garfield Hts. CitySchool Dist. v. State Bd. of Edn. (1992), 85 Ohio App.3d 117, 127. Appellant has argued that this Court incorrectly determined that the exhibits were absent from the appellate record. Appellant's motion for reconsideration is granted and this Court's June 6, 2007 decision is vacated. This Court now turns to the merits of the underlying appeal.
 II {¶ 3} On June 17, 2005, Defendant-Appellant James W. Fry was indicted in the Summit County Court of Common Pleas on one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; one count of possession of cocaine, in violation of R.C.2925.11(A), a felony of the second degree; one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2), a felony of the second degree; one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree; one count of possession of cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree; one count of carrying concealed weapons, in violation of R.C.2923.12(A)(1), a misdemeanor of the first degree; one count of possession of drugs, in violation of R.C. 2925.11(A), a misdemeanor of the third degree; and one *Page 3 
count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Via a supplemental indictment, Appellant was charged with an additional count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. Appellant pled not guilty.
 {¶ 4} On August 1, 2005, Appellant filed a motion to suppress and dismiss. On October 11, 2005, the State filed a brief in opposition to Appellant's motion to suppress and dismiss. The trial court conducted a suppression hearing on September 19, 2005. The trial court overruled the motion to suppress and the matter proceeded to trial on April 13, 2006. The trial court subsequently dismissed count nine of the indictment because Appellant had not been arraigned on that count. The trial court also granted Appellant's Crim.R. 29 motion on the counts of tampering with evidence and carrying a concealed weapon. Ultimately, the jury returned guilty verdicts on both counts of possession of cocaine, trafficking in cocaine, and illegal use or possession of drug paraphernalia.
 {¶ 5} The trial court sentenced Appellant to four years incarceration for the crime of second degree possession of cocaine; four years incarceration for the crime of second degree trafficking in cocaine; one year incarceration for the crime of fifth degree possession of cocaine; thirty days incarceration for the crime of illegal use or possession of drug paraphernalia. The trial court further ordered that Appellant's sentences run concurrently. *Page 4 
 {¶ 6} Appellant has timely appealed, asserting four assignments of error.
 III Assignment of Error Number One "THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION."
 {¶ 7} In his first assignment of error, Appellant has argued that the trial court improperly denied his motion to suppress. Specifically, Appellant has argued that the traffic stop involved was pretextual, and further, that the police officer's actions after the initial traffic stop constituted an unreasonable search and seizure. This Court disagrees.
 {¶ 8} "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." (Emphasis and internal citations omitted.) State v. Swan, 9th Dist. No. 22939, 2006-Ohio-2692, at ¶ 8. *Page 5 
 {¶ 9} Appellant has presented his first assignment of error as a series of sub-arguments. For the sake of clarity, this Court will address each sub-argument individually.
The Initial Traffic Stop {¶ 10} Appellant has argued that the Akron Police initiated a warrantless seizure of his person when Officer Ryan Rastorfer stopped the cab he was riding in for failure to use a turn signal. The State has contended that Officer Rastorfer properly stopped Appellant's cab for a legitimate traffic violation. Officer Rastorfer testified that he stopped the Appellant's cab for making a right turn without using a turn signal. The Akron Municipal Code mandates that no person shall make a turn without first giving an appropriate signal. Akron Mun. Code Section 72.15(A). While the need for a traffic signal was contested at the suppression hearing, the record before this Court is unclear as to the nature of the intersection where the infraction occurred.
 {¶ 11} Officer Rastorfer maintained it was an intersection which required use of a turn signal under city ordinances. Kevin Harris, the cab driver, first testified that he would use a turn signal when turning right onto Merriman from Bastogne but testified later that a driver would likely not use a turn signal at that intersection. This Court notes that what Mr. Harris believes a driver would do is not controlling. The question before the trial court was whether a valid traffic stop *Page 6 
was made and specifically, whether a turn was made without using a turn signal in violation of Akron Municipal Code.
 {¶ 12} Given the conflicting testimony and lack of any visual evidence in the record, this Court will defer to the trial court which was in a better position to gauge the credibility of the witnesses. SeeSwan at ¶ 8. Additionally, the record demonstrates that the trial court had the benefit of diagrams of the disputed intersection drawn by both Officer Rastorfer and Mr. Harris. Therefore, this Court finds that the trial court did not error when it concluded that Officer Rastorfer had probable cause to stop Appellant's cab for failure to use a turn signal. Accordingly, the traffic stop was not unreasonable under theFourth Amendment. See United States v. Whren (1996), 517 U.S. 806, 819;Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus.
 {¶ 13} Appellant has countered that the traffic stop was pretextual because Officer Rastorfer testified at the suppression hearing that he was not concerned about the turn signal and that he failed to issue a citation or a warning for the traffic violation. Even if Officer Rastorfer's failure to cite or warn the cab driver indicates a pretextual reason for the traffic stop, Appellant's argument still fails as a matter of law.
 {¶ 14} Both the United States Supreme Court and the Ohio State Supreme Court have held that a police officer's subjective intent when initiating a traffic stop has no bearing on the Fourth Amendment analysis if the officer stops the *Page 7 
vehicle based on probable cause that a traffic violation has occurred. See Whren, 517 U.S. at 819; Erickson, 76 Ohio St.3d at syllabus. This is the case even if the traffic stop is pretextual. Id. Here, the record is clear that Officer Rastorfer had probable cause to pull Appellant's cab over for a traffic violation: namely, the failure to properly use a turn signal. The initial traffic did not violate the Fourth Amendment.
The Subsequent Detention {¶ 15} In the alternative, Appellant has argued that Officer Rastorfer violated his Fourth Amendment rights when he ordered him out of the vehicle and subsequently detained him during the investigation. Appellant's argument is unpersuasive.
 {¶ 16} "When a lawfully stopped vehicle contains passengers, theFourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver."State v. Brown, 2d Dist. No. 20336, 2004-Ohio-4058, at ¶ 14, citingMaryland v. Wilson (1997), 519 U.S. 408. Further, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." State v. White, 9th Dist. No. 05CA0060,2006-Ohio-2966, at ¶ 10, quoting Wilson, 519 U.S. at 415. Additionally, an officer may request identification from a passenger without violating the Fourth Amendment. See State v. Chagris (1995), 107 Ohio App.3d 551,556-57. Here, Officer Rastorfer testified that he asked, not ordered, Appellant for identification *Page 8 
and that Appellant voluntarily complied. Again, this Court will defer to the trial court's finding that Officer Rastorfer was credible and that no constitutional violation occurred.
 {¶ 17} Appellant has also argued that Officer Rastorfer detained him beyond the constitutionally permitted timeframe. Generally, an investigatory stop must last no longer than required to issue a citation or check the detainee's record. State v. Mootoosammy (July 25, 2001), 9th Dist. No. 3150-M, at *3. However, if during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns.State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716, at *3, citingState v. Chatton (1984), 11 Ohio St.3d 59, 63 (holding that a driver may not be detained to investigate an issue other than that which precipitated the traffic stop absent some specific and articulable facts).
 {¶ 18} In the instant matter, it is helpful to establish a timeline according to the arresting officer's testimony at the suppression hearing. Officer Rastorfer testified to the following. He pulled the cab over and asked the driver to step out of the cab. When the driver complied, Officer Rastorfer escorted the driver to the rear of the cab so he could observe both the driver and the passenger at the same time. Officer Rastorfer requested and received the driver's license. Officer *Page 9 
Rastorfer then approached Appellant and asked to see identification. Appellant provided his identification and Officer Rastorfer ran a records check on both parties. The records search came back negative for warrants and the driver's license was valid.
 {¶ 19} At that point, Officer Rastorfer conferred with the driver and explained to him that he was not going to issue a citation and that he had been observing the house at 374 Nob Hill for drug activity. Officer Rastorfer then asked Appellant to step out of the vehicle and requested Appellant's consent to search his person. Appellant consented. Upon the search of Appellant's person, Officer Rastorfer found $673 and a knife with a three inch blade. Officer Rastorfer then testified that he looked into the back seat of the cab because "during the course of the stop" he had observed Appellant "reaching into his front shirt pockets and going back down to his waist." Upon inspection of the back seat, he noticed what appeared to be a small, white, rock-like substance in plain view, on the back seat of the cab where Appellant had been sitting.
 {¶ 20} He requested and received consent from the driver to search the vehicle, confiscated the substance, and field tested it. The substance tested positive for cocaine. Officer Rastorfer placed Appellant under arrest. After Appellant was placed under arrest, he was searched again and more crack cocaine was discovered in his shirt pocket. *Page 10 
 {¶ 21} Appellant has contended that Officer Rastorfer's constitutional authority to detain him ended when the traffic stop did, to wit, when the license search came back negative and Officer Rastorfer told the driver that he was not going to issue a citation. While Appellant is correct that the traffic stop had ended, he is mistaken that Officer Rastorfer's constitutional authority to detain him had ended as well. It is well established that an investigatory stop may be initiated if during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop. Shook, supra.
 {¶ 22} Courts will not condone "intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches[.]" Terry v. Ohio (1968), 392 U.S. 1, 22. Thus, reasonable suspicion is measured by an objective standard: "[W]ould the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief that the action taken was appropriate?" State v. Bobo (1988), 37 Ohio St.3d 177, 178-79, quotingTerry, 392 U.S. at 21-22. To that end, this Court has stated that:
 "[T]he Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. Bobo, 37 Ohio St.3d at 178-79; [State v. Andrews (1991), 57 Ohio St.3d 86, 87-88]. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances. Bobo, 37 Ohio St.3d at paragraph one of the syllabus; State v. *Page 11 Davison, 9th Dist. No. 21825, 2004-Ohio-3251, at ¶ 6, 15." White at ¶ 16.
Further, this Court has explained the above four factors as follows:
 "Location relates to whether the confrontation occurred in a reputed `high crime' area, an area of known drug activity, or perhaps a location under police surveillance. Bobo, 37 Ohio St.3d at 179 (heavy drug activity); Andrews, 57 Ohio St.3d at 88 (high crime). But, see, State v. Crosby (1991), 72 Ohio App.3d 148, syllabus (holding that individuals talking in or near a car, even when parked in an area known for drug activity, does not, without more, justify a search); State v. Davis (2000), 140 Ohio App.3d 659, 664-65 (stating that merely departing a house that is under surveillance is insufficient to justify a search).
 "The officer's experience carries certain authority. Terry, 392 U.S. at 5 (officer had 39 years of experience); Bobo, 37 Ohio St.3d at 179
(20 years); Andrews, 57 Ohio St.3d at 88 (12.5 years). Alternatively, an officer may be aware of particular crime or danger in the vicinity, or have particularized knowledge of how crimes, such as drug transactions, occur in the area. Bobo, 37 Ohio St.3d at 179; Davison at ¶ 9 (officer had previously arrested the suspect for a shooting incident, at which time the suspect had been armed).
 "The suspect's conduct or appearance includes suspicious, inexplicable, or furtive movements, such as watching-out, ducking, hiding, fleeing, or discarding an object. Bobo, 37 Ohio St.3d at 178-79 (suspect ducking out of sight and other furtive movements); Andrews, 57 Ohio St.3d at 88
(suspect running through a dark courtyard threw an object to the ground); State v. Lee (1998), 126 Ohio App.3d 147, 148 (cracked and burnt lips indicative of smoking crack cocaine).
 "The surrounding circumstances include the time of day or night, because certain activities would ordinarily occur late at night or because weapons would be less obvious in the dark. Bobo, 37 Ohio St.3d at 178-79 (night); Andrews, 57 Ohio St.3d at 88 (after nightfall, in a darkened area). Circumstances may also include an officer being out of a vehicle, away from protection, or without backup. Bobo, 37 Ohio St.3d at 178-79; Andrews, 57 Ohio St.3d at 88." Id. at ¶¶ 17-20. *Page 12 
Because we find that Officer Rastorfer had a reasonable suspicion of criminal activity, this Court concludes that he had the constitutional authority to detain Appellant and investigate the new concern.
 {¶ 23} In the present matter, competent, credible evidence exists of the following facts. The confrontation occurred near a house where just weeks prior, the police had discovered crack and drug paraphernalia. Further, while not dispositive in and of itself, the traffic stop occurred after Appellant had left the drug house. Officer Rastorfer testified that he had prior knowledge that a person named James Fry lived at the drug house. After obtaining Appellant's identification, Officer Rastorfer knew that Appellant was a resident of the drug house. Officer Rastorfer also testified that he had experience as a police officer with drug activity and that he was aware that taxi cabs are often used in drug transactions. Further, Officer Rastorfer testified that during the course of the stop, he had noticed that Appellant kept "reaching to his front shirt pockets and going back down to his waist." Officer Rastorfer testified that oftentimes people who move around a lot are trying to hide things. All of these factors, taken in the totality of the circumstances, would create reasonable suspicion of criminal (drug) activity in a man of reasonable caution. See Bobo,37 Ohio St.3d at 178-79; Shook at *3. *Page 13 
 {¶ 24} Based on the factual finding detailed above, this Court concludes that Officer Rastorfer had the authority to detain Appellant for investigation without violating his Fourth Amendment rights.
 {¶ 25} Further, during that investigation, Officer Rastorfer was within his constitutional authority to request Appellant's consent to search. "Even when officers have no basis for suspecting an individual, the United States Supreme Court has held that they may ask questions and request consent to search a person under the condition that they do not communicate that the individual must comply with their request."State v. Glen, 9th Dist. No. 02CA008011, 2002-Ohio-6609, at ¶ 16, citingFlorida v. Bostick (1991), 501 U.S. 429, 434-435.
 {¶ 26} "Consent to search must be voluntarily given, however it need not be knowing and intelligent as required for a waiver of rights."State v. Arnold (Apr. 28, 1999), 9th Dist. No. 2884-M, at *4, citingSchneckloth v. Bustamonte (1973), 412 U.S. 218, 248-49. "Voluntariness is found where, from the totality of the circumstances, it appears that the consent was not the product of governmental coercion."Arnold at *4. In the present case, the record provides no evidence that Officer Rastorfer ordered Appellant to comply with his request or that Appellant's consent was anything other than voluntary.
 {¶ 27} Further, regardless of consent, Officer Rastorfer was authorized to search Appellant under Terry. During a Terry stop, "a law enforcement officer may conduct a limited patdown search for concealed weapons if the officer *Page 14 
reasonably believes that `the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others[.]'" State v. Jones (June 2, 1999), 9th Dist. No. 19263, at *5, quoting Terry, 392 U.S. at 24. Thus, "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d at paragraph two of the syllabus. Furthermore, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.
 {¶ 28} In the present matter, Officer Rastorfer testified that Appellant's suspicious movements raised concerns for his safety. Officer Rastorfer knew Appellant resided in a "drug house" and testified that oftentimes "with drugs come weapons." This Court finds that, under the totality of the circumstances, Officer Rastorfer's correlation between drugs and weapons was reasonable, and that coupled with Appellant's suspicious movements, Officer Rastorfer was warranted in his belief that Appellant may be armed and dangerous. See Terry, 392 U.S. at 27. Accordingly, Officer Rastorfer was entitled to conduct a protective search to ensure his safety. Bobo, 37 Ohio St.3d at paragraph two of the syllabus. *Page 15 
 {¶ 29} Moreover, Officer Rastorfer had authority to seize the white, rocklike substance in the backseat of the taxi because after he had searched Appellant, he observed the substance in plain view in the back seat of the taxi. See State v. Turner (Apr. 1, 1998), 9th Dist. No. 96CA0096, at *4, quoting Minnesota v. Dickerson (1993), 508 U.S. 366,375. While under the plain view doctrine, it was unnecessary for him to do so, Officer Rastorfer requested and received consent to search the taxi from the driver. After a field test came back positive for crack cocaine, Officer Rastorfer placed Appellant under arrest and Officer Patalon legally searched Appellant incident to a lawful arrest, whereupon he discovered more crack in Appellant's shirt pocket. SeeState v. Miles, 9th Dist. No. 22090, 2004-Ohio-5687, at ¶ 11, citingUnited States v. Robinson (1973), 414 U.S. 218, 235.
 {¶ 30} It is clear to this Court that every step of Appellant's detention and search was constitutional. Based on the circumstances, a legitimate chain of events led Officer Rastorfer to have additional specific and articulable facts that gave rise to a reasonable suspicion of criminal activity beyond that which prompted the stop. It therefore was proper to detain Appellant to investigate those new concerns.Shook, supra. Further, the fact that Appellant was a passenger in a taxi cab and not a personal vehicle has no bearing on our analysis. SeeState v. Helton, 11th Dist. No. 2005-A-0043, 2006-Ohio-2494 (finding that a police officer had reasonable suspicion to detain and investigate a passenger in limousine based *Page 16 
on furtive gestures, including stuffing objects into his pockets, and had authority to conduct a limited patdown for his own safety).
 {¶ 31} Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN FALING TO SUPPRESS EVIDENCE OBTAINED DURING A SEARCH OF APPELLANT'S RESIDENCE AT 374 KNOB HILL WHEN THE BASIS OF THE WARRANT WAS INSUFFICIENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION."
 {¶ 32} In his second assignment of error, Appellant has argued that the trial court erred when it failed to suppress evidence obtained pursuant to a faulty affidavit. Specifically, Appellant has argued the information in the affidavit was insufficient, misleading, and lacking a nexus between Appellant's possession of cocaine when leaving his home in the cab and probable cause to believe additional drugs would be found at Appellant's home. This Court disagrees.
 {¶ 33} A court reviewing the sufficiency of probable cause in a submitted affidavit should not substitute its judgment for that of the issuing judge. State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 7, citing State v. George (1989), 45 Ohio St.3d 325, at paragraph two of the syllabus. Rather, the duty of a reviewing court is to determine whether the magistrate or judge had a substantial basis for concluding that probable cause existed. George, 45 Ohio St.3d at paragraph two of the syllabus. Great deference is to be given to the issuing *Page 17 
judge's determination and doubtful or marginal cases are to be resolved in favor of upholding the validity of the warrant. State v. Cash (Mar. 14, 2001), 9th Dist. No. 20259, citing George, 45 Ohio St.3d at paragraph two of the syllabus.
 {¶ 34} This Court has held the following regarding review of the sufficiency of an affidavit in support of a search warrant:
 "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. Illinois v. Gates (1983), 462 U.S. 213, followed.)" State v. Fisher, 9th Dist. No. 22481, 2005-Ohio-5104, at ¶ 6, quoting George, 45 Ohio St.3d at paragraph two of the syllabus.
 {¶ 35} Moreover, "[t]here is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information." (Quotations and citations omitted). Id. at ¶ 7. Where an affidavit sufficiently details some of the underlying circumstances, where the reason for crediting the informant is given, and where probable cause is or has been found, this Court should not rely on a hyper-technicality to invalidate a warrant. Id. Instead, the affidavit should be interpreted in a common sense manner. Id. *Page 18 
 {¶ 36} Finally, "probable cause is the existence of circumstances that warrant suspicion." (Quotations and citations omitted). Tejada at ¶ 8. Therefore, "the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires only a showing that a probability of criminal activity exists." (Quotations omitted). Id. See also, George, 45 Ohio St.3d at 329. Furthermore, courts view the totality of the circumstances in making probable cause determinations. Gates, 462 U.S. at 233.
 {¶ 37} The following information was contained in the affidavit submitted with the application for a search warrant. Police received numerous complaints about drug related activity related to the address in question, 374 Knob Hill Drive in Akron. Affiant swore that Appellant was in sole possession of 374 Knob Hill Drive. On June 7, 2005, a traffic stop involving Appellant was effectuated roughly one-half mile from the above address. During the course of that stop, crack cocaine was found on Appellant's person along with $678. At that time, Appellant informed officers that he was not employed. In addition, Appellant had on his person a "shopping list" which included items "involved in the use of crack cocaine." As a result, Appellant was arrested for suspected possession of drugs. Appellant listed 374 Knob Hill Drive as his place of residence.
 {¶ 38} Additionally, the affiant swore that three weeks earlier on May 16, 2005, the same address had been searched and crack cocaine and drug *Page 19 
paraphernalia were seized. Appellant was found on the premises during that search and arrested for drug possession.
 {¶ 39} Giving the appropriate deference to the magistrate's decision, we find that the magistrate had a substantial basis for concluding that probable cause existed to support a search of the residence. Appellant was arrested less than one mile from his residence with crack cocaine on his person and a list of items necessary to use that drug. Less than one month earlier, police had seized drugs and contraband from that same residence. Moreover, Appellant had nearly $700 in cash on his person despite being unemployed. Accordingly, the affidavit had ample evidence to support a determination that probable cause existed to issue a warrant to search Appellant's residence for drugs and drug paraphernalia.
 {¶ 40} Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three "THE VERDICTS OF GUILTY ON THE OFFENSES CHARGED WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE STATE FAILED TO PROVE THAT APPELLANT WAS IN POSSESSION OF THE DRUGS CHARGED OR POSSESSED DRUGS FOR PURPOSE OF TRAFFICKING."
 {¶ 41} In his third assignment of error, Appellant has argued that his convictions were against the manifest weight of the evidence. Specifically, Appellant has argued that the evidence presented by the State does not prove that he possessed any of the drugs as charged or that he was trafficking drugs. This Court disagrees. *Page 20 
 {¶ 42} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 43} Appellant was convicted on two counts of possession of cocaine, in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The first count was a second degree felony, which required Appellant to possess ten grams to twenty-five grams of crack cocaine. R.C. 2925.11(C)(4)(d). The second count, a fifth degree felony, required Appellant to possess any amount of crack cocaine. *Page 21 
 {¶ 44} Appellant was also convicted of trafficking in cocaine, in violation of R.C. 2925.03(A)(2), which provides:
 "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
Finally, Appellant was convicted of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), which provides that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia."
 {¶ 45} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 46} With regard to the possession counts, the record reflects the following. All of the cocaine confiscated was crack, that is, it was in rock or pebble form pursuant to R.C. 2925.01(GG). During the investigatory stop of Appellant's taxi cab, police noticed Appellant repeatedly reaching into his front shirt pocket and down to his waist. Police then found a rock of crack cocaine in *Page 22 
the back seat where Appellant had been sitting. Police also found crack in Appellant's shirt pocket. Police were also aware that a prior search of Appellant's house had yielded both drugs and drug paraphernalia. A search of Appellant's house on the night in question again resulted in the confiscation of crack cocaine and drug paraphernalia.
 {¶ 47} Appellant has contended that he did not own any of the cocaine found in his home. Even if Appellant did not own the drugs, it is clear that he constructively possessed them. "Possession may be actual or constructive." State v. Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "`knowingly [exercising] dominion and control over [the drugs], even though [they] may not be within his immediate physical possession.'" State v. Hardison, 9th Dist. No. 23050, 2007-Ohio-366, at ¶ 22, quoting State v. Hankerson (1982),70 Ohio St.2d 87, syllabus. See also, State v. Wolery (1976),46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession. State v. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the elements of constructive possession. See State v. Jenks (1991), 61 Ohio St.3d 259,272-73.
 {¶ 48} The Ohio Supreme Court has held that knowledge of contraband in one's home is sufficient to show constructive possession.Hankerson, 70 Ohio St.2d at 91. See also, State v. Owens, 9th Dist. No. 23267, 2007-Ohio-49, at ¶ 23, citing Hankerson, 70 Ohio St.2d at 91;State v. Molina, 8th Dist. No. 83731, 2004- *Page 23 
Ohio-4347, at ¶ 29 (stating "[i]t would have been difficult, if not impossible, for appellant not to have been aware of any activity going on in the apartment.") (Emphasis omitted). In Hankerson, the Court relied on the homeowner's dominion and control over the premises, the facts of normal home occupancy, and testimony that the contraband was in plain view to conclude that the jury had sufficient circumstantial evidence to infer that the appellants knew that contraband was located in the home. Hankerson, 70 Ohio St.2d at 91.
 {¶ 49} In the instant matter, even though Appellant was not in proximity to the drugs found in his home at the time it was searched, illegal drugs were found in plain view in his residence. Therefore, "[i]n accordance with Hankerson, the jury was entitled to infer from [Appellant's] dominion and control of the premises and the facts of normal home occupancy that he had knowledge that the illegal drugs were in his [residence]." State v. Powell, 8th Dist. No. 82054, 2003-Ohio-4936, at ¶ 22, citing Hankerson, supra. Such knowledge demonstrates constructive possession. Hankerson, 70 Ohio St.2d at 91;Owens at ¶ 23. While Appellant has posited the theory that his friends stashed the drugs at his house, we must note that Appellant's conviction may withstand evidence that is susceptible to some plausible theory of innocence. See State v. Figueroa, 9th Dist. No. 22208, 2005-Ohio-1132, at ¶ 7.
 {¶ 50} Regarding the trafficking convictions, Appellant has argued that the record is devoid of evidence indicating that he possessed the drugs and that he was *Page 24 
preparing them for distribution. This argument is untenable. This Court has held that the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment. Owens
at ¶ 37. See also, State v. Williams, 1st Dist. No. C-040747,2005-Ohio-6772, at ¶ 19; State v. Lyles (1989), 42 Ohio St.3d 98, 100
(drug paraphernalia is relevant in trafficking prosecution); State v.Smith, 3d Dist. No. 14-01-28, 2002-Ohio-5051, at ¶ 22 (jury could consider possession of drugs, scale, baggies, cash, and gun in conviction of trafficking).
 {¶ 51} Here, Appellant was found with crack cocaine and $673 cash in his possession. Appellant told police that he was unemployed. A search of Appellant's residence uncovered crack cocaine, plastic baggies, and other drug paraphernalia including drug pipes, spoons, and small mirrors. Accordingly, this Court concludes that it was permissible for the jury to infer that Appellant was preparing to distribute cocaine.
 {¶ 52} In conclusion, after making all reasonable presumptions in favor of the judgment, this Court cannot say that the jury clearly lost its way or created a manifest miscarriage of justice when it concluded that Appellant possessed illegal drugs and drug paraphernalia or when it concluded that Appellant was trafficking in cocaine. Otten,33 Ohio App.3d at 340. Furthermore, this Court is not persuaded that the evidence weighs heavily against Appellant's convictions. Id. *Page 25 
Therefore, this Court concludes that Appellant's convictions were not against the manifest weight of the evidence.
 {¶ 53} Appellant's third assignment of error lacks merit.
 Assignment of Error Number Four "THE TRIAL COURT ERRED IN SENTENCING DEFENDANT ON COUNTS OF THE INDICTMENT TO WHICH THE JURY HAS RENDERED VERDICTS OF NOT GUILTY IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS."
 {¶ 54} In his fourth assignment of error, Appellant has argued that the trial court's sentencing journal entry is inconsistent with the verdict as read by the jury foreman at trial. Appellant has argued that this disparity resulted in Appellant being sentenced on counts for which he had been found not guilty, and thus constitutes reversible error. This Court disagrees.
 {¶ 55} Initially, we note that Appellant has not provided this Court with any case law to support his argument. For instance, Appellant has claimed that "[c]ount numbers are more than just clerical notations." Further, he has argued that "[verdicts are rendered specifically by count numbers and defendants must be sentenced likewise." It has long been the position of this Court that Appellant bears the burden "to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3; App.R. 16(A)(7). As such, Appellant has failed to meet his burden on appeal to demonstrate error by the trial court. See Tivenan v. Lons, 9th Dist. No. 03CA0147-M, 2004-Ohio-4975, at ¶ 13-17. *Page 26 
 {¶ 56} Moreover, Appellant's substantive argument is unpersuasive. It is widely held that "a trial court only speaks through is journal entry[.]" State v. Overstreet, 9th Dist. No. 21367, 2003-Ohio-4530, at ¶ 8. In the instant matter, the sentencing entry journalized on April 25, 2006 is consistent with the verdict forms signed by the jurors and contained in the record. Further, Appellant was convicted by a jury of certain crimes and was subsequently sentenced on those specific convictions, regardless of count. Appellant has therefore failed to demonstrate to this Court a vital component of reversal — how the alleged error in his sentencing was prejudicial to him. See Smith v.Flesher (1967), 12 Ohio St.2d 107, 110.
 {¶ 57} Appellant's fourth assignment of error lacks merit.
 IV {¶ 58} Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 27 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, P. J. MOORE, J. CONCUR *Page 1