DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Cynthia A. White, has appealed from her convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On or about January 16, 2007, Officers Justin Morris and Brian Cresswell arrived at White's residence to conduct a "knock and talk." The officers decided to investigate White based on a tip from Officer Brian Simcox. Officer Simcox had received word from a local pharmacy that White purchased *Page 2 
psuedoephedrine and believed that White might be involved in illegal activity. When White opened the door of her residence for Officers Morris and Cresswell, they both smelled a strong, chemical odor. Neither officer, however, was trained in chemical odor recognition, so they gave White a false story about investigating vehicle break-ins in the area and left the residence.
 {¶ 3} Over the next week, Officers Morris and Cresswell continued to watch White's residence. They noticed a vehicle parked at the residence and ran the vehicle's plates through their database. Officer Morris discovered that the registered owner of the vehicle had an outstanding arrest warrant, so on or about January 22, 2007, he and Officer Cresswell followed and stopped the vehicle. The officers discovered that White's son was driving the vehicle rather than the registered owner. Officers conducted a search of the vehicle and discovered a container of red phosphorous in the vehicle's trunk along with several coffee filters. Officers Morris and Cresswell relayed this information, as well as the information about their knock and talk at White's residence, to Officer David Crockett, a member of the Clandestine Laboratory Enforcement Team ("CLET").
 {¶ 4} On January 23, 2007, Officer Simcox and Officer Crockett arrived at White's residence to perform another "knock and talk." Both officers had extensive training in dealing with methamphetamine labs and immediately recognized the smell associated with methamphetamine production when White opened the door. The officers asked White to step outside the residence and *Page 3 
conducted a protective sweep. The sweep only lasted three to five minutes, but officers saw several suspicious items in plain view during their entry. Officer Simcox specified that the basement contained an inactive methamphetamine lab.
 {¶ 5} After finishing their initial protective sweep, officers arrested and Mirandized White. She spoke with Officer Crockett for a short period of time and made several statements about her involvement with the methamphetamine. White then voluntarily consented to allow the officers to search her residence. She signed a consent form, and the officers performed a full search of her residence.
 {¶ 6} On February 6, 2007, the grand jury indicted White on the following charges: (1) illegal manufacturing of drugs, a first degree felony, pursuant to R.C. 2925.04(A); (2) illegal assembly or possession of chemicals for the manufacturing of drugs, a second degree felony, pursuant to R.C. 2925.041; (3) aggravated possession of drugs, a fifth degree felony, pursuant to R.C. 2925.11(A); (4) illegal use or possession of drug paraphernalia, a fourth degree misdemeanor, pursuant to R.C. 2925.14(C)(1); and (5) possession of criminal tools, a fifth degree felony, pursuant to R.C. 2923.24. On March 26, 2007, White filed a motion to suppress, arguing that officers lacked probable cause to enter her residence. The trial court denied White's motion on May 23, 2007.
 {¶ 7} On August 23, 2007, the jury found White guilty on all charges. Subsequently, the trial court sentenced White to a total of four years in prison and *Page 4 
five years of post-release control. On November 14, 2007, White filed her notice of appeal.
 {¶ 8} White's appeal is now before this Court, raising three assignments of error for our review. We have rearranged the assignments of error to facilitate our review.
 II Assignment of Error Number Three "THE TRIAL COURT ERRORED IN DENYING APPELLANT'S MOTION TO SUPPRESS, AS THERE WAS NO PROBABLE CAUSE TO BELIEVE THE RESIDENCE WAS BEING USED IN THE ILLEGAL MANUFACTURE OR METHAMPHETAMINE." (Sic.)
 {¶ 9} In her third assignment of error, White argues that the trial court erred in denying her motion to suppress because the officers' warrantless search of her apartment was not based on probable cause. Specifically, she argues that officers did not have sufficiently reliable evidence that an exigency existed before they entered her apartment. We disagree.
 {¶ 10} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. *Page 5 Searls (1997), 118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
 {¶ 11} The Fourth Amendment protects individuals from warrantless searches and seizures that are not based upon probable cause, nor issued by a neutral and detached magistrate. Section 14, Article I of the Ohio Constitution mimics the language of the Fourth Amendment and similarly guards against unreasonable searches and seizures. State v.Carrigan, 9th Dist. No. 21612, 2004-Ohio-827, at ¶ 10. "Absent exigent circumstances, a warrantless search or seizure effected in a home is per se unreasonable." Id., citing Payton v. New York (1980), 445 U.S. 573,590. The exigent circumstances doctrine requires that both probable cause and exigent circumstances exist before an officer initiates a warrantless entry pursuant to the doctrine. State v. Sandor, 9th Dist. No. 23353, 2007-Ohio-1482, at ¶ 7, citing State v. Marlow (Feb. 28, 1996), 9th Dist. No. 17400, at *2, citing Payton, 445 U.S. at 588-89.
 {¶ 12} Initially, we note that White has not challenged this Court's prior determination that the operation of a methamphetamine production laboratory constitutes an exigent circumstance. See Sandor at ¶ 10-12. See, also, R.C. 2933.33(A) (providing that exigent circumstances exist and officers may conduct a warrantless search of a premises if they have probable cause to believe that the premises is being used for illegal manufacturing of methamphetamines). Nor has she argued that officers exceeded the scope of the initial, protective search that *Page 6 
they engaged in after entering her home. See State v. Walters, 9th Dist. No. 23795, 2008-Ohio-1466, at ¶ 10-11, citing Maryland v. Buie (1990),494 U.S. 325, 327 (holding that after an officer's initial entry, he may engage in a limited search of the premises incident to an arrest, if he has "a reasonable belief based on specific and articulable facts" that a protective sweep is necessary to minimize potential danger to himself or others). She only argues that officers did not have probable cause to believe that a methamphetamine laboratory existed, such as to trigger the exigency and justify their initial entry. Consequently, we confine our analysis to White's probable cause argument with regard to the officers' initial entry. See App.R. 16(A)(7); Loc.R. (7)(B)(7).
 {¶ 13} "`[P]robable cause is the existence of circumstances that warrant suspicion.'" State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8, quoting State v. Young, 11th Dist. No. 2000-A-0078, 2001-Ohio-4284, ¶ 23.[1] "[T]he standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires `only a showing that a probability of criminal activity exists.'" Tejada at ¶ 8, quoting Young at ¶ 23. Moreover, in analyzing *Page 7 
whether officers had probable cause to proceed, reviewing courts will look to the totality of all the facts and circumstances as they existed at the time of the incident. See State v. Fry, 9th Dist. No. 23211,2007-Ohio-3240, at ¶ 36, citing Illinois v. Gates (1983), 462 U.S. 213,233.
 {¶ 14} The record reflects that two officers arrived at White's Akron residence on January 23, 2007, to conduct a "knock and talk" and to acquire additional information that might help officers obtain a search warrant. One officer, Officer Simcox, was a ten year veteran with Drug Enforcement Agency training in methamphetamine lab recognition, dismantling, and cleaning. The second officer, Officer Crockett, was a seven year veteran and member of CLET. Both officers testified at the suppression hearing. Both indicated that when White opened her door they immediately smelled an overwhelming odor consistent with the odor that they have been trained to associate with methamphetamine production. Officers Simcox and Crockett further indicated that they believed they had probable cause to enter White's home at this point based on this odor and the information they had available to them before arriving at White's residence.
 {¶ 15} Officer Simcox testified that he went to White's residence to question her because her name had appeared in the "lab books" that the local pharmacies use to keep track of certain purchasers. Officer Simcox explained that when an individual purchases pseudoephedrine, a drug used to manufacture methamphetamine, pharmacies log that individual's name in a lab book and *Page 8 
provide the police with access to that book. Consequently, he accompanied Officer Crockett to White's home to further investigate White's possible involvement in methamphetamine production.
 {¶ 16} Officer Crockett testified that he went to White's residence with Officer Simcox to follow up on certain events that had occurred earlier in the week. He specified that approximately one week earlier, two other officers conducted a "knock and talk" at White's residence and noticed a suspicious odor emanating from within. However, those officers lacked methamphetamine identification training and could not justify entering White's home on that basis. Officer Crockett also testified that one day earlier, those same officers stopped White's son for an unrelated traffic violation and found a canister, containing "a red substance" and marked "red p" in the trunk of the vehicle. Officer Crockett explained that red phosphorus is yet another substance used in the production of methamphetamine. Accordingly, he also went to White's home on January 23, 2007, to investigate her possible involvement in methamphetamine production.
 {¶ 17} The record reflects that after Officers Simcox and Crockett smelled the odor coming from White's residence, they brought her outside and conducted a sweep of her home. Both officers testified that methamphetamine laboratories are extremely dangerous and that they entered White's home because they believed that it contained such a lab and feared that an explosion or other harmful incident might be imminent. White argues that the officers did not have probable cause to *Page 9 
enter her home because the presence of an odor, standing alone, is not evidence that criminal activity probably exists. She further argues that the officers could not rely on the other evidence that Officer Crockett referred to because that evidence "was spoiled as it was over a week old and unreliable."
 {¶ 18} White's arguments fail for several reasons. First, the traffic stop of the vehicle her son was driving occurred the day before Officer Simcox and Officer Crockett's investigation, not over a week before. Second, while information certainly can lose its relevancy and reliability if not acted on in a reasonable time, we are not aware of any law that officers must immediately act upon any information they receive. Officers Simcox and Crockett went to White's home approximately a week after other officers had been there and smelled an odor from within. We cannot say that the passage of one week detracted from the relevancy or reliability of this evidence. Third, both Officer Simcox and Officer Crockett were extensively trained in the identification of methamphetamine laboratories. Officer Crocket testified that he had dealt with at least 100 such laboratories, and Officer Simcox testified that upon smelling the odor there was "no question" that White's residence contained a methamphetamine laboratory. Given the officers' extensive training and the other evidence available to them at the time, we must conclude that the officers had probable cause to enter White's home. See Fry at ¶ 36 (noting that probable cause must be accessed based on the totality of the circumstances). *Page 10 
 {¶ 19} The trial court did not err in denying White's motion to suppress. Therefore, White's third assignment of error lacks merit.
 Assignment of Error Number One "THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE INDICTED OFFENSES BEYOND A REASONABLE DOUBT."
 Assignment of Error Number Two "THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF ILLEGAL MANUFACTURE OF DRUGS OR ILLEGAL POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS TO WARRANT THE CASE BEING SUBMITTED TO THE JURY."
 {¶ 20} In her first assignment of error, White argues that her illegal manufacturing and illegal possession convictions were against the manifest weight of the evidence. In her second assignment of error, White argues that these same convictions were based on insufficient evidence. We disagree.
 {¶ 21} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), *Page 11 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address White's challenge to the weight of the evidence first, as it is dispositive of her claim of sufficiency.
 {¶ 22} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340. *Page 12 
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 23} R.C. 2925.04(A) provides that "[n]o person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." Methamphetamines are a type of controlled substance. R.C. 3719.01(C) (defining "controlled substance" as including any Schedule II substance); R.C. 3719.41(C)(2) (listing methamphetamine as a Schedule II controlled substance). In defining the term "knowingly," the Revised Code provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person *Page 13 
has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 24} White argues that the evidence at trial did not support the conclusion that she either illegally manufactured or illegally possessed any chemicals or items necessary to produce methamphetamines. She points to the innocuity of the separate items police found in her home, alleging that "these items, alone are not illegal." Further, she claims that other individuals such as her landlord and a former boyfriend had access to her basement and could have stored any unlawful items there without her knowledge.
 {¶ 25} Our review of the record convinces us that the jury did not lose its way in convicting White of both illegal manufacturing and illegal possession. Officers Simcox and Crockett both testified that when they performed a "knock and talk" at White's residence on January 23, 2007, they were both immediately overwhelmed by a strong odor. Both officers had extensive training in methamphetamine recognition, and both testified that the odor emanating from White's home was consistent with that of methamphetamine manufacturing.
 {¶ 26} After officers performed a protective sweep of White's home and obtained her consent to search the home, they uncovered the following materials: a gallon of acetone; approximately one hundred boxes of matchbooks, many of which had been stripped of their striker plates; Naptha; Coleman fuel; crystal iodine; coffee filters stained with methamphetamine residue; bi-level liquid *Page 14 
containing meth oil; and tubing. While many of these items might be harmless on their own, Officer Simcox testified that all of these items are components used to manufacture methamphetamines. Thus, when viewing the evidence in the collective, Officer Simcox was able to conclude that White's residence was being used to manufacture methamphetamines.
 {¶ 27} As previously noted, White claims that she had no knowledge of any items that were stored in her basement because she rarely frequented the basement, she shared the basement with her landlord who stored many of his own items there, and other individuals might have had access to her unattended residence during her unrelated stay in jail a short while before Officers Simcox and Crockett came to her residence. White's testimony at trial, however, contradicted the earlier statements that she made to officers on the night of January 23, 2007. The record reflects that after officers took White into custody and Mirandized her, she made several statements to Officer Crockett. Specifically, she told Officer Crockett that she let another person manufacture methamphetamines in her home because she needed the money. She further stated that she helped that person by washing jars and stripping the striker plates from matchbooks. At trial, White claimed that she never made these statements to Officer Crockett. While admitting that she used methamphetamines and noticed a strong chemical smell in her house, she maintained that she had no knowledge of any methamphetamine lab or production. Since the officers involved in White's *Page 15 
arrest and the search of her residence testified to one version of the events and White testified to another, the decision below was essentially a matter of credibility. We cannot say that the jury lost its way in determining that Officer Crockett was a more credible witness than White. See Often, 33 Ohio App.3d at 340; Thompkins,78 Ohio St.3d at 387.
 {¶ 28} Moreover, even if the evidence did not support White's acting as a principal in the manufacturing and possession of methamphetamines, the trial court also instructed the jury on aiding and abetting. R.C.2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." "Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity." State v. Herring (2002), 94 Ohio St.3d 246,251, quoting R.C. 2923.03(F). "R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." Id., citingState v. Keenan (1998), 81 Ohio St.3d 133, 151. White testified that either her landlord or the other individual who had access to her apartment while she was incarcerated must have brought the methamphetamine contraband into her home. Consequently, although the State did not include a complicity charge in White's indictment, she introduced evidence supporting that theory during trial and the trial court instructed the jury *Page 16 
on aiding and abetting. See State v. Perryman (1976), 49 Ohio St.2d 14,27-28 (finding that even though the indictment and bill of particulars failed to reference a complicity charge, an aiding and abetting instruction was proper because the defendant "presented evidence from which reasonable men could find him guilty as an aider and abettor."), vacated on other grounds Perryman v. Ohio (1978), 438 U.S. 911. See, also, State v. Anderson, 9th Dist. No. 22845, 2006-Ohio-5048, at ¶ 28.
 {¶ 29} "To aid is to assist." State v. Williams, 9th Dist. No. 21840,2004-Ohio-4316, at ¶ 19, quoting State v. Sims (1983),10 Ohio App.3d 56, 58. For a person to be convicted of aiding or abetting another in a crime, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime." State v. Johnson (2001), 93 Ohio St.3d 240, syllabus. Further, the evidence must show that the defendant expressed concurrence with the unlawful act or intentionally did something to contribute to an unlawful act. State v. Stepp (1997),117 Ohio App.3d 561, 568.
 {¶ 30} The record supports a finding that White aided and abetted another in the illegal manufacturing and possession of methamphetamines. By her own statements to Officer Crockett, she admitted that she helped to clean jars and strip matchbooks. Officer Simcox testified that methamphetamine manufacturers often strip matchbooks of their strike plates because the plates contain red phosphorus. He explained that red phosphorous is an ingredient used to make *Page 17 
methamphetamine. Officer Simcox also testified that the police initially investigated White because she had purchased psuedoephedrines, another necessary methamphetamine component, from a local pharmacy. Consequently, even if White did not manufacture the methamphetamine herself, the record supports the conclusion that she obtained the materials necessary to aid or abet another in its production. The jury did not lose its way in convicting White of both illegal manufacturing and illegal possession.
 {¶ 31} Lastly, White argues that her conviction for illegal manufacturing should not have been a first degree felony because the State failed to prove that she committed the offense within a thousand feet of a school. See R.C. 2925.01(P) (defining "vicinity of a school" as "within one thousand feet of the boundaries of any school premises"). R.C. 2925.04(C)(3)(b) provides, in relevant part, that:
 "If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a * * * school, * * * illegal manufacture of drugs is a felony of the first degree[.]"
 {¶ 32} White argues that the method the State used to calculate the distance between her residence and the closest elementary school was unsound. The record reflects that Officer Morris measured the distance using a measuring wheel from the traffic unit and verified the distance, approximately 965 feet, with a traffic laser. The record further reflects that White failed to object to Officer Morris's *Page 18 
testimony at trial as well as to the admission of his report as one of the State's exhibits.
 {¶ 33} To preserve an alleged error for appeal, a party must timely object and state the specific grounds for the objection. State v.Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 24. A failure to do so results in a forfeiture of the objection and limits any claim of error on appeal to "plain errors or defects affecting substantial rights." State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 15-17, quoting Crim.R. 52(B). Yet, this Court will not construct a claim of plain error on behalf of an appellant who fails to raise such an argument in her brief. See State v. Hairston, 9th Dist. No. 05CA008768,2006-Ohio-4925, at ¶ 11, citing App.R. 16(A)(7). White failed to object to Officer Morris's measurements below and has not argued plain error on appeal. Consequently, we decline to address her argument that his measurements were inaccurate.
 {¶ 34} Having disposed of White's challenge to the weight of the evidence, we similarly dispose of her sufficiency challenge. SeeRoberts, supra, at *2. White's first and second assignments of error are overruled.
 III {¶ 35} White's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 19 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, P. J., MOORE, J., CONCUR.
[1] We note that a probable cause analysis applies in this case because the record is devoid of any evidence that would trigger the emergency aid exception to the warrant requirement, instead of the general exigency doctrine. Compare State v. White, 9th Dist. No. 23522,2008-Ohio-657, at ¶ 17-21 (applying the emergency aid exception, a subset of the exigency doctrine that only requires officers to have "some reasonable basis, approaching probable cause," where officers saw the suspect run upstairs and heard glass break while attempting to effectuate a "knock and talk" at the suspect's residence). *Page 1